IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CR. NO. 94-458-1 |
| --- | --- | --- |
|  | : | CA. NO. 10-2162 |
| vs. | : |  |
|  | : |  |
| SEAN BRANHAM | : |  |

**M E M O R A N D U M**

PRATTER, DISTRICT JUDGE                                        DECEMBER 21, 2011

**BACKGROUND**

Sixteen years ago a jury convicted Sean Branham of two counts of separate armed assaults on U.S. Postal Service letter carriers and two counts of pointing a gun at the two letter carriers during each of the two assaults. Our now deceased colleague, District Judge Charles Weiner, imposed a sentence of 244 months imprisonment.[1] Both Mr. Branham and the Government timely appealed. Mr. Branham took exception to the trial court's denial of the defense suppression motion as well as to the court's refusal to discount the guidelines' impact of his criminal history. The Government appealed the trial court's declination to impose a 20 year mandatory consecutive sentence pursuant to 18 U.S.C. § 924(c). The Court of Appeals rejected Mr. Branham's arguments but accepted those of the Government. Thus, the appellate court vacated the 244 month sentence and remanded the case for re-sentencing.

On May 24, 1996, the district court re-sentenced Mr. Branham to a total of 400 months imprisonment, comprised of concurrent 100 month sentences on the two assault counts, 60

---

[1] The sentence was comprised of concurrent sentences of 100 months each for the assaults, 60 consecutive months for one of the gun counts, and a further 84 consecutive months of imprisonment on the second gun count. The Court applied the career offender enhancement under Guideline § 4B1.1 because Mr. Branham had a prior drug conviction and a prior conviction for a crime of violence.

consecutive months for one of the gun counts and, as instructed by the Court of Appeals, 240 further consecutive months on the Count 8 gun charge. Mr. Branham's appeal contending that the sentence was excessive was denied when the Court of Appeals affirmed the sentence on March 14, 1997.

Mr. Branham now submits his pro se § 2255 motion claiming, inter alia, that his attorney was ineffective for (1) failing to conduct a meaningful investigation and not disputing the "career offender" designation on the grounds that the simple assault, a misdemeanor, was not a crime of violence, (2) failing to challenge the Court of Appeals' jurisdiction to consider the Government's appeal, and (3) colluding with the Government due to a conflict of interest arising from criminal charges pending against counsel at the time of his representation of Mr. Branham.[2]

## **DISCUSSION**

As an initial matter, Mr. Branham's § 2255 Petition is entirely untimely. Section 2255, which allows defendants to collaterally attack their convictions and/or sentences while in prison, has a one year limitations period that only permits a defensive filing within one year of the latest of:

(1) the date on which judgment of conviction became final;

(2) the date on which the impediment to making a motion created by government

---

[2] Mr. Branham also states that in 2007 he filed a petition in the District of New Jersey pursuant to the All Writs Act that was dismissed on June 19, 2008. Since the time Mr. Branham filed his § 2255 motion, very able counsel has been assigned for Mr. Branham to assist with this matter. Bringing to bear customary advocacy, counsel added to the grounds for justifying the § 2255 application to include additional reasons for finding trial counsel to be ineffective, as well as purported newly recognized substantive law of the U.S. Supreme Court that counsel asserts supports Mr. Branham's claim that the simple assault was not a crime of violence that justified imposing the career offender enhancement.

2

(3)   the date on which the right asserted by defendant was first recognized by the U.S. Supreme Court and made retroactively applicable; or

(4)   the date on which the facts supporting the claim could have been discovered through the exercise of reasonable diligence.

28 U.S.C. § 2255(f).[3]

Subsections 1, 2, and 4 of § 2255(f) do not appear to give any solace here to Mr. Branham, and, indeed, he does not appear to mount any argument to the contrary. In regards to subsection 3 of § 2255(f), Mr. Branham's primary claim is that he should not have received career offender status because in <u>Johnson v. United States</u>, 130 S. Ct. 1265 (2010), the U.S. Supreme Court created new substantive law suggesting that not every simple assault is a crime of violence for the purposes of Guideline § 4B1.1,[4] and that in order to qualify as such, the record must categorically reflect that the assault constituted a crime of violence. Accordingly, Mr. Branham argues that because he pled only to simple assault under 18 Pa. Cons. Stat. § 2701 as his prior offense, and there is nothing categorical on the record to suggest that he committed a crime of violence,

---

[3]Thus, collateral review can ensure that courts conduct proceedings in a manner consistent with the state of the law extant. Its purpose is not to provide a mechanism for consistently re-examining final judgments on the strength of subsequent changes. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288 (1989).

[4]<u>Johnson</u> specifically dealt with the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"). <u>Johnson</u>, 130 S. Ct. at 1265. The Court of Appeals for the Third Circuit has held that the definitions of "violent felony" in the ACCA and "crime of violence" in the Sentencing Guidelines are "close enough that precedent under the former must be considered in dealing with the latter." <u>United States v. Johnson</u>, 587 F.3d 203, 208 n.5 (3d Cir. 2009). Thus, the Supreme Court's analyses in <u>Johnson</u> and prior cases interpreting what constitutes a violent felony under the ACCA are applicable to this Court's analysis of what constitutes a crime of violence under the Sentencing Guidelines.

3

Johnson dictates that he should not have received the career offender enhancement to his sentence.

The Government, on the other hand, argues that the new right asserted by Mr. Branham was, if at all, first recognized by the United States Supreme Court in Begay v. United States, 553 U.S. 137 (2008), where the Court held that for a crime to constitute a "violent felony" under the second prong of the ACCA, it must involve "purposeful 'violent' and 'aggressive' conduct."[5] Id. at 144-45. The Government interprets Johnson merely as a refinement of the holding in Begay, not as a recognition of any new substantive rights. Accordingly, the Government reasons, Mr. Branham's § 2255 petition is rendered untimely because the Supreme Court decided Begay on April 16, 2008, more than two years before Mr. Branham filed his motion.

The Court agrees with the Government that Mr. Branham's petition is untimely. First, assuming the Supreme Court announced a newly recognized right at all, it did so in Begay, not in Johnson. In spite of Mr. Branham's protestations to the contrary, nothing in Johnson suggests that the Supreme Court recognized a new right, let alone a new right with retroactive application relevant to Mr. Branham's claim here.[6] Johnson, simply applied the general reasoning of Begay

---

[5]In Begay, after taking as a given that a conviction for driving under the influence ("DUI") did not constitute a violent felony under the first prong of the ACCA because it did not have "as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), the Supreme Court found that a New Mexico defendant's prior DUI conviction did not constitute a violent felony under the second prong of the ACCA because it is not of a similar kind to the specifically enumerated offenses in the act, namely, burglary, arson and extortion. 553 U.S. at 144-45. In other words, a DUI was not sufficiently "purposeful 'violent' and 'aggressive' conduct" to constitute a violent felony. See also Chambers v. United States, 555 U.S. 122, 127-28 (2009) (applying Begay to find that a defendant's conviction for failing to report to prison did not constitute a violent felony).

[6]In Johnson, the Supreme Court held that a violation of Florida's battery statute did not constitute a violent felony under the first prong of the ACCA because under the terms of the Florida statute, battery can be proven upon a showing of the most nominal intentional contact

4

to determine that not all violations of Florida's battery statute constitute violent felonies under the first prong of the ACCA. Central to the Supreme Court's holding in Johnson was that the Florida battery statute, as interpreted by the Florida Supreme Court, required only the most minimal showing of intentional physical contact, such as a tap on the shoulder. Id. at 1269-70 (citing State v. Hearns, 961 So. 2d 211, 218 (Fla. 2007)). That is simply not the case with the Pennsylvania simple assault statute at issue here. 18 Pa. Cons. Stat. § 2701. The Third Circuit Court of Appeals has already held that intentional or knowing assault under the simple assault statute constitutes a crime of violence under the career offender provision of Guideline § 4B1.1. Johnson, 587 F.3d at 211 (noting that "the statute itself contemplates bodily harm to the victim as a prerequisite to conviction," and that the Court of Appeals "cannot imagine a scenario in which simple assault under Pennsylvania law could not present a risk of injury."). Although the Pennsylvania simple assault statute also criminalizes reckless conduct, it is unmistakable from the record that Mr. Branham's assault conviction was premised on intentional conduct.[7] Because

---

without consent. Johnson, 130 S. Ct. at 1269-70. The Court interpreted the language "physical force" in the first prong of the ACCA, to mean 'violent force–that is, force capable of causing physical pain or injury to another person," Id. at 1271, and reasoned that a situation could occur in which the conduct proscribed by the Florida statute would not necessarily rise to the level of violent physical force required to meet the first prong of the ACCA. Id. at 1272. Indeed, in Johnson, nothing in the record of the plaintiff's battery conviction permitted the sentencing court to conclude that it rested upon conduct that could be categorized as a violent felony. Id. at 1269. Accordingly, consistent with the reasoning set forth in Begay, the Court concluded that when the law by which a defendant has been convicted is general or ambiguous as to violence, the sentencing court may consult the trial record for the basis of the conviction in order to see if the crime is indeed one of violence. Id. at 1273.

[7] While the Court's ruling about the untimeliness of the § 2255 petition governs the outcome here, the record presented describes Mr. Branham's conduct in the following terms: "While at [location] the Defendant unlawfully grabbed [P.D.], 40, and punched her numerous times in the face and head and also threatened to kill her. Thereafter, she was transported to a hospital for treatment of the resulting injuries." U.S. Ex. A, Criminal complaint for M.C. 93-05-2965. Later, at the plea hearing on July 27, 1993, the then-Assistant District Attorney Seth Williams described the conduct to which Mr. Branham entered a negotiated plea without a trial

5

Johnson does not create a new right applicable to this case, and merely refined the Court's ruling in Begay, it does not govern the statute of limitations for purposes of Subsection (3) of § 2255(f).

Second, even if this Court were to assume that Johnson created a new right, it would not help Mr. Branham in this case considering that the two prongs of § 4B1.2 set forth a disjunctive test for determining what constitutes a crime of violence. Whereas Johnson only dealt with the first prong of the ACCA, the Government correctly asserts that Mr. Branham's assault conviction falls directly within the scope of the second prong of Guideline § 4B1.2 as interpreted in Begay.[8] Accordingly, even with the benefit of Johnson, Mr. Branham's simple assault conviction still would constitute a crime of violence under the career offender provision.

Third, assuming that the Supreme Court recognized a new right in Begay and it should be applied retroactively – both rather monumental leaps – there would still need to be some record-

---

as follows: "[Mr. Branham] called [P.D.] at 7:50 a.m. on May 24 of '93 and he wanted to talk to her and she refused. She then left from her job, she's a service aid [sic] in a school for young children in her block. While crossing the playground on Baynton Street, the Defendant came up to her and grabbed her by the shirt and wanted to talk. She tried to break away and he punched her in the left eye and knocked her down. He began kicking her in the legs and thighs. He then bent over her and punched her at least a dozen times about the face and head. The children were screaming and yelling. The Defendant said 'You're going to talk to me or I'm going to kill you' . . . . [P.D.] would testify that she was admitted to the Germantown Hospital. X-rays were taken and they were all negative. She had a left eye that was badly swollen." U.S. Ex. B, 7/27/93 HRG. TR. at N.T. 8-9.

[8]To constitute a crime of violence under the second prong of the career offender provision of the Sentencing Guidelines, the "crime in question 'must (1) present a serious potential risk of physical injury and (2) be roughly similar, in kind as well as degree of risk posed, to the examples [burglary, arson, extortion, or use of explosives] themselves.'" Johnson, 587 F.3d at 207-08 (quoting United States v. Polk, 577 F.3d 515, 518 (3d Cir. 2009)). As previously noted, a crime is similar in kind to those listed in the Sentencing Guidelines "if it typically involve[s] purposeful, violent, and aggressive conduct." Begay, 554 U.S. at 144-45 (citation omitted). The Court is satisfied that the conduct of Mr. Branham in the incident described would merit the description of being a crime of violence with considerable room to spare.

based reason to conclude that Mr. Branham was, through no fault of his own, precluded from initiating suit within the one year period. There is no basis on which to surmise – much less deduce – that any such excuse or reason applies.

**CONCLUSION**

Mr. Branham's § 2255 motion is untimely and is, accordingly, denied.[9]

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[9]The other arguments appointed counsel marshals for Mr. Branham are no more availing. Counsel argues that trial counsel was ineffective for not pursuing Fourth Amendment suppression motions for Mr. Branham. However, as the Government points out, the record of the underlying case reflects that Mr. Branham's trial counsel did indeed endeavor to win suppression of photographic identification and of a firearm located during a search. The trial court's denial of the suppression motion was appealed. The pending § 2255 motion cannot be used to re-litigate issues previously resolved on direct review. See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993); see also Pub. Interest Research Grp. of N.J. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997).